scfvdsytrtwerweIN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| TRAVIS DUNCAN, | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 17-03404-CV-S-BP |
| | ) |
| BLACKBIRD PRODUCTS GROUP, LLC, | ) |
| Defendant. | ) |
| | ) |

**SUGGESTIONS IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL "PRIVILEGED" DOCUMENTS AND SANCTIONS REGARDING SAME AND REFUSAL TO ANSWER DEPOSITION QUESTIONS**

COMES NOW Defendant, Blackbird Products Group, LLC, by and through its attorney Christopher P Lawson of Lawson Law Office, LLC, pursuant to Federal Rules of Civil Procedure 37(d), 30(d)(2), and 26(g) and moves for an Order compelling Plaintiff to produce discovery responses and Order Sanctions based on Plaintiff's insufficient privilege log responses, spoliation issues and refusal to answer deposition questions. In support of its Motion, Defendant states as follows:

**A.   RELEVANT FACTUAL BACKGROUND**

1. Plaintiff is a photographer, hired by Defendant, in approximately February of 2017, to create content photographic images for use in its various media campaigns and on-line sales sites.

2. Plaintiff electronically sent all images in controversy via email and shared files to Defendant.

3. After Defendant had used the images in various media campaigns and on-line sales

1

sites, Plaintiff electronically sent all invoices and Terms and Conditions (the date the Terms and Conditions were included is in dispute) via email to Defendant. The invoices have a header indicating they are from Travis Duncan Photography and contain an EIN number. The parties followed this practice until there was a billing dispute.

4. Defendant paid in full Invoices 2555, 2556 and 2557 with the Job names Lifestyle Shoot/Binder Park, Ranger 65 on White and Stainless Group Composite, respectively.

5. On September 1, 2017, unbeknownst to Defendant, Plaintiff applied for copyright registration, titled: Group Registration of Photos, Mammoth, published, March 10, 2017 thru June 16, 2017; 539 photos. *See* (Doc. 72-10).

6. On September 6, 2017, Plaintiff emailed Defendant all the photographs and images through a link in hightail, "in case you need it."

7. Plaintiff in his "Third Amended Complaint" (Doc. 72) filed August 14, 2019, alleged for the first time that he also mailed the invoices and Terms and Conditions.

8. At issue is when those Terms and Conditions were sent to Defendant.

9. Plaintiff, without Defendant's knowledge or consent, used stock images in his creation of content photographic images for Defendant.

10. Plaintiff, without Defendant's knowledge or consent, used images which included Defendant's registered marks in media campaigns including MailChimp, various social media sites and on-site imagery.

11. Plaintiff has asserted the following claims against Defendant: (1) Copyright Infringement; (2) First Digital Millennium Copyright Act Violation-Removal; (3) First Digital Millennium Copyright Act Violation-Distribution; (4) Breach of Contract; (5) Account Stated; and (6) Quantum Meruit/Unjust Enrichment.

12. Plaintiff has filed eight (8) pleadings that he titled complaints, amended complaints, or corrected complaints. See (Docs 1, 12, 15, 16, 21, 58, 64 and 72.) And although he titled his last complaint "Third Amended Complaint" it is more accurately the 8th one filed. Plaintiff's "Third Amended Complaint" was filed August 14, 2019.

13. Defendant counter-claimed against Plaintiff the following: (1) Declaratory Judgment- Invalidity of Plaintiff's Copyright- due to ownership issues including Work for Hire and multiple authors; (2) Declaratory Judgment-Unenforceability; (3) Trademark Infringement; (4) Trademark Infringement-false designation of origin; (5) Breach of Contract; (6) Fraud; (7) Negligent Misrepresentation.

14. For background, Plaintiff has engaged in a pattern in this lawsuit of refusing to answer Defendant's requests for discovery.

15. On July 24, 2019, Defendant's attorney emailed Plaintiff's attorney reminding him of the ongoing duty to maintain all evidence in this case and they should immediately implement a retention policy. *See* (Ex. 1)

16. The relevant issues for the purposes of this Motion and without waiving any other sanctions motions are the following:

17. On August 26, 2019, Defendant filed Defendant's Notice of Deposition Duces Tecum of Plaintiff and his wife, Amber Duncan[1], which included an Exhibit A with requested documents and things. (Docs. 78 and 77)

18. To his deposition on September 25, 2019, Plaintiff brought eight receipts, Plaintiff's purported copyright agreement and statement dated September 23, 2019, two pages of

---

[1] Plaintiff and his wife are both owners, officers, and directors of Duncan Photography, Inc.

handwritten notes, general Shutterstock terms and unlabeled terms and conditions, and a paper copy of the September 6, 2017 email from Plaintiff with copies of invoices. These items were not labeled as to which requests they were responsive to. Plaintiff brought no documentation regarding the images registered with the Copyright office.

19. At his deposition, Plaintiff admitted he did not bring his email campaign results from MailChimp. (Travis Duncan Depo TR 93:8-13)

20. At his deposition Plaintiff made five objections based on attorney client privilege.

   a. "Who drafted this copyright agreement and statement…was it your Attorney?" Plaintiff's attorney, "Don't answer that question." (Travis Duncan Depo TR 183:11-25)

   b. "When did you give those products to your attorney?" Plaintiff's attorney, "Don't answer the question." (TD Depo TR 190:15-18)

   c. "Do you have a contingency fee agreement with your attorney?" (TD Depo TR 190:25 – 191:8)

   d. "…had you already consulted an attorney at that point?" (regarding registration of copyright) Plaintiff's attorney, "Don't answer that question." (TD Depo TR 252:12-19)

21. Plaintiff admitted at his deposition that he did not have copies of the invoices he alleged that he mailed to Defendant and that to produce them for discovery, he created new invoices, statements and orders that included the addition of Defendant's physical address. (TD Depo TR 266:25 – 267:6) *See* (Ex. 2)

22. Plaintiff submitted an affidavit, explaining his "Workaround" he used to create the new orders, statements and invoices. See (Doc. 113-2).

23. Discovery disputes continued between the parties, such that the Court appointed a Special Master on November 12, 2019. (Doc 114)

24. Due to ongoing discovery disputes, including Defendant's claim that Plaintiff falsified and/or took actions resulting in the spoliation of evidence, in approximately December of 2019, the Special Master granted an Ameriwood production[2].

25. The Ameriwood production was executed over multiple days and culminated on approximately September 21, 2020.

26. On October 8, 2020, Plaintiff produced a Privilege Log regarding files and emails recovered at the Ameriwood production. The referenced document is included below and notably does not designate which privilege Plaintiff is asserting, attorney-client or work product.

TRAVIS DUNCAN V. BLACKBIRD PRODUCTS GROUP, LLC
PRIVILEGE LOG

| DATE | DESCRIPTION | PRIVILEGE |
| --- | --- | --- |
| N/A | File Directory-Lines:<br><br>1-1875<br>7985-8425<br>8690-9077<br>9093-9147<br>9192-9193<br>13794-14639<br>15245<br>15498-15500<br>15548-15637<br>15785-15821<br>16098-17429<br>17494-17552<br>17785-17796 | Documents created by Travis Duncan and delivered to counsel for the purpose of obtaining legal advise. |
| 7/19/18 | Date and Time Stamp Information for "Terms and Conditions" files recovered from the iMac | Documents created by Travis Duncan and delivered to counsel for the purpose of obtaining legal advise. |
| 3/27/20 | Email from Travis Duncan to Rob Schultz and Michael Rudd re client | Email to counsel for the purpose of obtaining legal advise. |
|  |  |  |

---

[2] *Ameriwood Industries Inc. v. Liberman*, 2006 WL 3825291 (E.D.Mo. 2006) outlined a procedure for governing the creation of mirror images of a party's computer equipment and subsequent discovery of information contained therein.

27. Plaintiff is expected to be deposed on October 13, 2020 pursuant to a 30(b)(6), Corporate Representative Deposition for Duncan Photography, Inc. and Defendant is anticipating ongoing privilege objections from Plaintiff.

**B.  LEGAL STANDARD**

The party asserting attorney client privilege bears the burden of establishing the existence of the privilege claims. *Taber v. Ford Motor Company*, No. 16-00162-CV-W-SWH, 2017 WL 4391779, at *4 (W.D. Mo. Sept. 29. 2017). The rules do not specify what information must be provided in a privilege log, the courts have generally held that the "privilege log should set forth specific facts which if taken as true establish the elements of the privilege for each document for which the privilege is claimed." *Id*. In *Taber*, the Court stated, "…it is important that the privilege log contain a brief description or summary of the contents of the document, the date the document was prepared, the person or persons who prepared the document, the person to whom the document was directed and for whom the document was prepared, the purpose in preparing the document, what privileges are asserted for each document and how each element of the privilege is met for that document." *Id*. Plaintiff's attorneys were recently have found to have waived the privilege with respect to the documents referenced in their privilege log. *Rightchoice Managed Care, Inc. v. Hospital Partners, Inc*, No. 5:18-cv-06037-DGK, 2020 WL 5733207 *7 (W.D. Mo., September 24, 2020). Notably, the Court noted "the privilege log's descriptions of the withheld documents lack sufficient details [] to evaluate the claims of privilege…" *Id.*

The attorney-client privilege applies to communications when it is "1) Information transmitted by voluntary act of disclosure; 2) between a client and his lawyer; 3) in confidence; and 4) by a means which, so far as a client is aware, discloses the information to no third parties

6

other than those reasonably necessary for the transmission of the information or for the accomplishment of the purpose for which it is to be transmitted." *Id*. "Moreover, the communication must have been made for the purpose of obtaining legal advice in order for the communication to be privileged." Further, the privilege "will only attach to communications between the attorney and the client when the client reasonably expects their communication to remain confidential." *Id*. The privilege protects the substance of the attorney-client communications, "it does not protect disclosure of the underlying facts by those who communicated with the attorney." Id. at *6 citing *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). Further, "a client cannot shield a document from discovery by including it in a request for legal advice." Id. Courts have found that the date that Plaintiff retained or first met with an attorney is not protected by attorney-client privilege because that is a disclosure of an act, not the substance of a confidential communication. See. *In re Application for Subpoena to Kroll*, 224 F.R.D. 326, 328 (E.D.N.Y 2004) and *Wise v. Southern Tier Express, Inc*, No. 2:15-CV-01219-APG-PAL, 2017 U.S. Dist. LEXIS 106321 (D.Nev. July 10, 2017).

"The attorney-client privilege is waived by voluntary disclosure of privileged communications, and courts typically apply such waiver to all communications on the same subject matter." *Sexton v. Lewis*, 2008 WL 11337861 * 2, (W.D.Mo. May 7, 2008) citing *Painewebber Group v. Zinsmeyer Trusts Partnership*, 187 F.3d 988, 992 (8th Cir. 1999). The attorney-client privilege may be waived when it is found that the client places the subject matter of the privileged communication in issue. State ex rel. Behrendt v. Neill, 337 S.W.3d 727, 729 (Mo.App.E.D. 2011). The attorney-client privilege can be lost under the crime-fraud exception to the attorney-client privilege. The party challenging the privilege must 1) make an independent prima facie case that a crime has been committed and 2) then demonstrate that the privileged information bears a

7

relationship to the alleged crime or fraud. *State ex rel. Peabody Coal Co. v. Clark*, 863 S.W.2d 604, 608 (Mo. 1993). *State ex rel. Peabody Coal* did not address the question whether Missouri law recognizes a crime-fraud exception to the attorney-client privilege in civil cases. However, other district courts have found that the crime-fraud exception extends to materials or communications created in planning, or in furtherance of spoliation of evidences. See *Rambus, Inc v. Infineon Technologies AG,* 222 F.R.D 280, 290 (E.D. Virginia) . (May 18, 2004). See also *Major Tours, Inc. v. Colorel*, No. 05-3091, 2009 WL 2413631 at *2 (DNJ Aug. 4, 209) holding litigation hold letter discoverable due to finding of spoliation; *Keir v. Unumprovident Corp*., No. 02-CV-8781(DLC) 2003 WL 21997747 at *6 (S.D.N.Y, Aug. 22, 2003) allowing analysis of emails after finding electronic records ordered preserved were erased.

The work product doctrine protects materials prepared by an attorney in anticipation of litigation from discovery. *Taber* at *4. The party seeking protection must show the materials were prepared in anticipation of litigation. *Id*.

"Federal Rule of Civil Procedure 26 imposes various affirmative duties that regulate the discovery process." *White v. CitiMortgage*, No. 15-0289-CV-W-SRB, 2018 WL 4926306 *1 (W.D. Mo. 2018). Rule 26(e)(1)(A) requires a party to "supplement or correct its disclosure or response in a timely manner if the party learns that ins some material respect the disclosure or response is incomplete or incorrect." 'Rule 26(g) establishes "an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37.'" *Id*. At *1 citing Fed.R.Civ. P. 26(g) Advisory Comm. Note to 1983. "Rule 26(g) imposes on each party and their counsel a duty to responsibly engage in pretrial discovery." *Id*. At *1 citing *Garrett v. Albright*, No. 4:06-CV-4137NKL, 2008 WL 681766, at *8 (W.D. Mo. March 6, 2008). Further, Rule 26(g)(1) requires that every disclosure and discovery response "be

8

signed by at least one attorney of record." *Id*. "This signature 'certifies that to the best of the person's knowledge, information and belief formed after a reasonable inquiry' that a disclosure is 'complete and correct as of the time it is made' and that a discovery response is 'consistent with the rules and existing laws.'" *Id*.

"The Rule 26(g) signature requirement "obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection" and "certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand." *Id*.

"The Rules pertinent to discovery also authorize-and sometimes require-courts to impose sanctions as a remedy for discovery abuse." *White v. CitiMortgage*, No. 15-0289-CV-W-SRB, 2018 WL 4926306 *2 (W.D. Mo. October 10, 2018). The purpose of discovery sanctions is "'to penalize those whose conduct may be deemed to warrant' them and 'deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Sec. Nat. Bank of Sioux City, IA v. Day*, 800 F.3d 936, 942 (8th Cir. 2015) (quoting *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976).

The conduct of depositions by oral examination is governed by Federal Rule of Civil Procedure 30. Objections are to be "noted on the record" and "stated concisely in a nonargumentative and nonsuggestive manner." Fed.R.Civ.P. 30(c)(2). "The advisory committee's comments instruct that argumentative objections, suggestive objections, and directions to a deponent not to answer, improperly disrupt, prolong and frustrate deposition testimony." Id. cited by *Security Nat. Bank of Sioux City, IA v. Day*, 800 F.3d 936, 942 (8th Cir. 2015). "An excessive number of unnecessary objections may itself constitute sanctionable

9

conduct. To deter such practices, Rule 30(d)(2) authorizes courts to impose appropriate sanctions on any person who impedes, delays, or frustrates the fair examination of a deponent. Id.

"Fed. R. Civ. P. 37 addresses the imposition of sanctions. " *InfoDeli, LLC v. Western Robidoux, Inc*., No. 4:15-CV-00364-BCW, 2020 WL 1862632 *1. (W.D. Mo. March 19, 2020). "The Court has an inherent authority and discretion to "fashion an appropriate sanction for conduct which abuses the judicial process." *Id*., citing *Sherman v. Rinchem Co., Inc*., 687 F.3d 996, 1006 (8th Cir. 2012); *Harlan v. Lewis*, 982 F.2d 1255, 1260 (8th Circ. 1993). Fed. R. Civ. P. 37(c ) provides that '[i]f a party fails to provide information…as required by Rule 26(a) or (e)" and the failure is not "substantially justified" or "harmless," the court "may order payment of the reasonable expenses, including attorney's fees, caused by the failure" and "may inform the jury of the party's failure." *White*, *Id*. At *2 citing Fed. R. Civ. P. 37(c )(1)(A)-(B). "Rule 37(c ) gives a district court 'wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case' if a party fails to comply with Rule 26." *White*, *Id*. At *2 citing *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). "The purpose of sanctions under 26(g) and 37(c ) is "to deter abuse and compensate the opposing party for 'all expenses, whenever incurred, that would not have been sustained had the opponent conducted itself properly.'" *White*, *Id*. At *2 citing *Johnson Int'l Co. v. Jackson Nat. Life Ins. Co*., 19 F.3d 431, 439 n.10 (8th Cir. 1994) (quoting In re Stauffer Seeds, 817 F.2d 47, 50 (8th Cir. 1987); *Vanderberg v. Petco Animal Supplies Store, Inc.,* No. 17-2580, 2018 WL 4779017, at *3 (8th Cir. Oct. 4, 2018) ("The disclosure mandates in Rule 26 are given teeth by the threat of sanctions in Rule 37.")

The court, in determining what sanctions are appropriate, "should consider, inter alia, the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the

importance of the information or testimony.  *Wegener*, 527 F.3d. at 692 (citing *Sellers v. Mineta*, 350 F.3d 706, 711-12 (8th Cir. 2003).

C.     **LEGAL DISCUSSION AND ANALYSIS**

   1.     **PRIVILEGE LOG**

The privilege log provided by Plaintiff fails to identify the necessary information to determine if the documents are subject to the attorney-client privilege.  The log indicates a date but it is not clear if that date represents when the documents were created or when emailed, it does not indicate to whom the document was directed and for whom the document was prepared, nor does it indicate the purpose of preparing the document, what privileges are asserted for each document and how each element of the privilege is met for that document.

It appears that Plaintiff is trying to prevent the date and time stamp information for the Terms and Conditions files recovered.  Defendant asserts that Plaintiff has waived the privilege as to that information as Plaintiff has previously provided that document in its native format which includes metadata with date and time stamp information.  If the Plaintiff suggests he has not waived his privilege, Defendant posits that the date and time stamp do not constitute the substance of the confidential information but rather just underlying facts regarding its creation.  Further, the Terms and Conditions have been produced by Plaintiff in his Complaint and in fact Plaintiff places the dates the Terms and Conditions were delivered at issue in his Complaint.  (*See* Doc. 72, Paragraphs 14-26).

Plaintiff has further placed the Terms and Conditions, their creation and their delivery at issue by his admission that he re-created invoices, orders and statements.  He admitted to such in his deposition and in his affidavit.  He admits to adding Defendant's physical address – after amending his Complaint to include that the Terms and Conditions were mailed to Defendant.

11

Further, it has been revealed in discovery that Plaintiff altered numerous websites; and created a copyright agreement after that point became an issue in this litigation. Defendant should be afforded the opportunity to confirm Plaintiff's acts of spoliation and furtherance of same.

As Plaintiff has wholly failed to identify the documents in his privilege log, waived the substantive issues long ago by providing said documents, putting said documents at issue and creating spoliation issues of said documents, Plaintiff should be compelled to produce all said documents to Plaintiff's 30(b)(6) deposition on October 13, 2020. As the sanctions are to deter abuse and compensate the opposing party and as Plaintiff's attorney have been recently admonished for this same type of behavior, Defendant should be awarded reasonable attorney's fees with regards to its attempts to gather discovery regarding same.

## 2. DEPOSITION BEHAVIOR

A number of the same issues that were asked, but Plaintiff was directed not to answer, remain. At issue is the dates the Terms and Conditions were created, used by Plaintiff both in this case and with prior product photography, the extent of Plaintiff's spoliation of information regarding same. Based on Plaintiff's privilege log, it appears he intends to argue these points again. At issue is the creation of a copyright agreement; Plaintiff's possession of Defendant's products and subsequent delivery of same to his attorney; the validity of documents Plaintiff has produced and when he consulted an attorney which is important as to whether the privilege applies and Plaintiff's motivations in this case in general.

Plaintiff's attorney disrupted the previous deposition with argumentative objections and numerous times advised the Plaintiff not to answer the question. Plaintiff's attorney's objections impeded, delayed and frustrated the examination of Plaintiff and Defendant anticipates the same

behavior at the October 13, 2020 deposition.  For those reasons, Defendant requests that sanctions be imposed to deter ongoing and subsequent discovery abuses.

WHEREFORE, the Defendant prays this Court grant Defendant's Motion to Compel Plaintiff to produce alleged privileged documents and for Sanctions related to those documents and deposition abuses; Plaintiff be required to pay a reasonable amount for Defendant's attorney fees and costs incurred herein as illustrated above; and for such further relief the Court shall deem just and proper in these premises.

Respectfully Submitted,

**LAWSON LAW OFFICE, LLC**

/s/ Christopher P. Lawson
Christopher P. Lawson #KS-000955
6750 Antioch Road, Suite 301
Overland Park, Kansas 66204
913-432-9922 tel.
913-432-9933 telefax
chris.lawson@lawsonlawllc.com
Attorney for Defendant

## CERTIFICATE OF SERVICE

       I DO HEREBY CERTIFY that a notice of a true and correct copy of this document was transmitted to Plaintiff by the Court's Electronic Case File System on October 13, 2020 addressed to:

**SCHULTZ & ASSOCIATES, LLP**
Robert Schultz #35329
640 Cepi Drive
Chesterfield, Mo. 63005
636-537-4645 tel.
636-537-2599 telefax
rschultz@sl-lawyers.com

Michael Rudd
Sandberg, Phoenix & von Gontard, PC-KCMO
4600 Madison Avenue
Suite 1000
Kansas City, MO 64112
816-425-9699
Email: mrudd@sandbergphoenix.com
Attorney for Plaintiff

Philip R. Dupont
Sandberg, Phoenix & von Gontard, PC-KCMO
4600 Madison Avenue
Suite 1000
Kansas City, MO 64112
816-627-5533
Fax: 816-627-5532
Email: pdupont@sandbergphoenix.com
Attorney for Plaintiff

Shazzie Naseem
BerkowitzOliver, LLP
2600 Grand Boulevard, Suite 1200
Kansas City, MO 64108
Ph: 816-561-7007
Fax: 816-561-1888
SNaseem@BerkowitzOliver.com
Special Master

**LAWSON LAW OFFICE, LLC**

/s/ Christopher P. Lawson
Christopher P. Lawson #KS-000955
6750 Antioch Road, Suite 215
Overland Park, Kansas 66204
Ph: 913-432-9922
Fax: 913-432-9933
E-Mail: chris.lawson@lawsonlawllc.com